IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SHEILA D. CAPOSSELA                                                                   PLAINTIFF

                  v.                               Civil No. 04-6141

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                           DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

       Plaintiff, Sheila Capossela, appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her applications for disability insurance benefits (hereinafter "DIB"), and supplemental security income benefits (hereinafter "SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i)* and *423*, and § 1602 of Title XVI, *42 U.S.C. § 1381a,* respectively.

       Plaintiff was 42 years of age at the time of the administrative hearing and has an eighth or ninth grade education (T. 244, 121, 143). She has past relevant work as a boat builder/assembler, heli arc welder, cook, maid, industrial cleaner and a tuber (T. 244-248). Plaintiff asserts disability due to: chronic obstructive pulmonary disease (hereinafter "COPD")/emphysema; anxiety/depression; shortness of breath; decreased ability to concentrate; migraine headaches; fatigue; and, arthritis.

       The Social Security Administration denied plaintiff's applications initially and on reconsideration. She then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was held on January 14, 2004 (T. 243-271). The ALJ

rendered an unfavorable decision on July 22, 2004 (T. 10-18). By Order entered September 14, 2004, the Appeals Council denied the plaintiff's Request for Review of the hearing decision (T. 3-5), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision. See *42 U.S.C. § 405(g)*. Each party has filed an appeal brief, herein (Doc. #7 & 8), and this matter is now ready for consideration.

**Applicable Law:**

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir.2002)*. Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.2003)*. As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari, 258 F.3d 742, 747 (8th Cir.2001)*. In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir.2000)*.

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see 42 U.S.C. §§ 423(d)(1)(A),*

*1382c(a)(3)(A)*. The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *42 U.S.C. §§ 423(d)(3), 1382c(3)(C)*. A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See *20 C.F.R. §§ 404.1520(a)-(f)(2003)*. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. See *McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir.1982); 20 C.F.R. §§ 404.1520, 416.920 (2003)*.

Further, the ALJ may discredit subjective complaints which are inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir.1993). The law on this issue is clear. Under *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir.1984), "an ALJ must look at five factors when determining the credibility of a claimant's subjective allegations of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir.1995); see also*

*Baker v. Sec. of HHS, 955 F.2d 552, 555 (8th Cir.1992)*. The absence of an objective medical basis which supports the subjective complaints of pain is just one factor to be considered in evaluating the credibility of a plaintiff's subjective complaints of pain. *Polaski v Heckler, 751 F.2d 943, 948 (8th Cir.1984); see also, Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir.1995)*. The ALJ must "discuss" these factors in the hearing decision. *Herbert v. Heckler, 783 F.2d 128, 131 (8th Cir.1986)(citing Polaski v. Heckler, 751 F.2d 943, 948-950 (8th Cir.1984))*. Consideration must also be given to all the evidence presented related to the claimant's prior work history, and the observations of non-medical third parties, as well as treating and examining physicians related to the above matters. *20 C.F.R. § 416.929; Social Security Ruling 96-7p; Polaski v. Heckler, 751 F.2d 943 (8th Cir.1984)*(subsequent history omitted).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler, 739 F.2d at 1322*.

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir.1987)*. The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir.1988)*.

Implicit in the ALJ's task of making a credibility determination is the requirement that

he "discuss" the *Polaski* factors. *Herbert v. Heckler*, *783 F.2d at 130* (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

In summary, the ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991)* ("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations"); *Herbert v. Heckler*, *783 F.2d at 131* (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

"Nonexertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." *Asher v. Bowen, 837 F.2d 825, 827 n. 2 (8th Cir.1988).* Examples include "mental, sensory, or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions." *Id.; See 20 C.F.R., Pt. 404, Subpart P, Appendix 2, §§ 200.00(e).*

Residual functional capacity is what a plaintiff can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the plaintiff's description of her limitations. *Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir.2001);* see also, *Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995); 20 C.F.R. §§ 416.945(a).*

AO72A
(Rev. 8/82)

Further, when a plaintiff suffers from exertional and nonexertional impairments, as asserted here, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the plaintiff's work capacity. *Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir.1988).* If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled. *Id.* That is to say, "an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Id. at 349-50.* The United States Court of Appeals for the Eighth Circuit has explained as follows:

> In this context, "significant" refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the Guidelines, however persistent nonexertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled.

*Id. at 350.* See also, *Holz v. Apfel, 191 F.3d 945, 947 (8th Cir.1999); Foreman v. Callahan, 122 F.3d 24, 26 (8th Cir.1997); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir.1997).*

Further, the prevailing rule, in the Eighth Circuit and elsewhere, is that "the report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir.1987).* However, neither is

AO72A
(Rev. 8/82)

the opinion of the treating physician "conclusive in determining disability status, [since it] must be supported by medically acceptable clinical or diagnostic data." *Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir.1989)*. Moreover, the deference accorded a treating physician is premised upon, as exists here, a presumed familiarity with the plaintiff's condition. *See, e.g., Peterson v. Shalala 843 F.Supp. 538, 541 (D.Neb.,1993)* citing *Havas v. Bowen, 804 F.2d 783, 785 (2d Cir.1986)*.

The fact that a physician is not trained in the statutes and regulations of the Social Security Act does not preclude the physician from evaluating the plaintiff. The physician's findings and conclusions constitute substantial evidence which must be carefully weighed by the ALJ and the Commissioner. Unless there is medical evidence that contradicts or refutes the physician's medical conclusion, the Commissioner is *bound* to treat the treating physician's diagnosis and conclusion as substantial evidence.[1] *Morse v. Shalala 16 F.3d 865, 872 -873 (8th Cir.1994),* citing *Bastien v. Califano, 572 F.2d 908, 912 (2d Cir.1978);* see also *Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir.1982)* ("If the ALJ concludes that a treating physician's evidence is credible, therefore, he should give it controlling weight in the absence of evidence to the contrary because of the treating physician's greater familiarity with the plaintiff's conditions and circumstances."

We note, however, that although a treating physician's opinion is entitled to great

---

[1] This approach is consistent with Social Security Regulations that grant controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. *See 20 C.F.R. § 416.927(d)(2) (1993) (effective Aug. 1, 1991); Nelson v. Sullivan, 966 F.2d 363, 367-68 (8th Cir.1992)* (recognizing that "the new regulation merely codifies this circuit's law regarding the opinions of treating physicians").

AO72A
(Rev. 8/82)

weight, it does not automatically control or obviate the need to evaluate the record as whole. *Hogan v. Apfel* 239 F.3d 958, 961 (8th Cir.2001). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior, or more thorough medical evidence, or if the treating physician has offered inconsistent opinions. *Id; Rogers v. Chater,*118 F.3d 600, 602 (8th Cir.1997).

In short, the ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces him otherwise. *Id.* As but one example, a treating physician's opinion is not entitled to its usual substantial weight when it is, essentially, a vague, conclusory statement. *Piepgras v. Chater,* 76 F.3d 233, 236 (8th Cir.1996), citing *Thomas v. Sullivan,* 928 F.2d 255, 259 (8th Cir.1991). Rather, conclusory opinions, which are rendered by a treating physician, are not entitled to greater weight than any other physician's opinion. *Id.; Metz v. Shalala,* 49 F.3d 374, 377 (8th Cir.1995).

The Code of Federal Regulations sets forth additional factors, to assist the ALJ in determining what weight should be afforded to the opinion of a given physician, including a treating physician. The Regulations encourage the ALJ to afford more weight to those opinions which are "more consistent with the record as a whole." *20 C.F.R. § 416.927(d)(4).* More weight is also to be extended to "the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *20 C.F.R. § 416.927(d)(5).* When presented with a treating physician's opinion, the ALJ is obligated to examine the nature and extent of the treatment relationship, attributing weight to such an opinion that is proportionate to the knowledge that the medical provider has about the plaintiff's impairments. *20 C.F.R. § 416.927(d)(2)(ii).* Additionally, the ALJ must either attempt to

AO72A
(Rev. 8/82)

reconcile the medical reports of the treating physicians with those of the consulting physicians, or direct interrogatories to each of the physicians to obtain a more substantiated opinion of the plaintiff's capabilities and the onset of his disabilities. See *Smith v. Schweiker, 28 F.2d 1158, 1163 (8th Cir.1984); O'Leary v. Schweiker, 710 F.2d 1334, 1342 (8th Cir.1983); Funderburg v. Bowen 666 F.Supp. 1291, 1298 -1299 (W.D.Ark.,1987).*

"[A] factfinder is not permitted to adopt the opinion of a consulting physician who examined claimant only once over the opinion of claimant's treating physician." *Robertson v. Sullivan, 925 F.2d 1124, 1126 (8th Cir. 1991),* and the United States Court of Appeals for the Eighth Circuit has consistently discounted the opinions of non-treating physicians who have seen the patient only once, much less, not at all. *Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir.1991); Riley v. Shalala 849 F.Supp. 679, 682 (E.D.Ark.,1993).*

Finally, it should be noted that whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*.

**Discussion:**

The plaintiff contends that the instant matter should be remanded for the following reasons: the ALJ's finding that plaintiff "has no [non]exertional impairments" is not based

-9-

upon substantial evidence; the rationale for discounting the treating physician's opinion is legally insufficient; and, the ALJ failed to present a proper hypothetical question to the vocational expert (hereinafter "VE").

Plaintiff was treated by Dr. Shawn Purifoy, beginning in 1997. She was diagnosed with "major COPD changes but no obvious infiltrate." (T. 154). Plaintiff was seen again by Dr. Purifoy on March 26, 2002, at which time she complained of migraine headaches, emphysema, asthma and depression. Plaintiff reported she was currently taking Zoloft, an antidepressant, Dr. Purifoy gave plaintiff samples of Zoloft, and prescribed Midrin for her migraine headaches (T. 160). Plaintiff remained under Dr. Purifoy's care through August 21, 2002, according to the administrative record (T. 160).

Plaintiff began seeing Dr. John Vaughn on February 21, 2001 for headaches/ cephalalgia, cough, depression, panic disorder, emphysema and stress (T. 210). She was treated by Dr. Vaughn until August 1, 2003. According to the plaintiff, Dr. Vaughn began refusing treatment because she was unable to pay her outstanding medical bill (T. 254). Nonetheless, on July 14, 2003, Dr. Vaughn completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he found plaintiff was capable of : lifting/carrying only less than five pounds for less than an hour during an eight hour workday, five days a week; standing and walking less than one hour during an eight hour workday; sitting for less than one hour during an eight hour workday; never reaching overhead; reaching shoulder high, handling five pounds or under, handling over five pounds, performing fine manipulation and working around the sensation of hot/cold, for less than one hour in an eight hour workday (T. 208).

Dr. Vaughn further found that plaintiff could not perform reliably working around dangerous machinery due to the effects of medication. He listed environmental limitations plaintiff should avoid as: high and low temperatures; high and low humidity; moving machinery; dust; cooking fumes; cleaning chemicals; paint fumes; automobile emissions; noise; and, vibration, due to her emphysema (T. 209). Based upon his treatment history with the plaintiff, and his knowledge of her conditions, their severity and effects, the need for medical treatment, the frequency and severity of exacerbations or "flare ups", Dr. Vaughn opined that plaintiff would be unable to work four or more days per month (T. 209).

Plaintiff was evaluated by Brenda H. Nobles, Ph.D., on November 7, 2002. Plaintiff exhibited a flat affect, and reported a history of depression, anxiety attacks and emphysema "for years", and counseling off and on for four years (T. 161). Plaintiff also reported headaches, and a history of physical abuse from both her father and her second husband, from whom she was divorced (T. 161-162). Dr. Nobles noted plaintiff had difficulty remembering things and concentrating. She denied hallucinations, but admitted delusions and "unusual power", although she couldn't explain exactly what she meant (T. 162). Plaintiff admitted suicidal ideation, but denied ever having attempted suicide. Depression reportedly affects plaintiff's appetite and energy level and interests, but not her sleep patterns (T. 162-163). Her estimated IQ was 75 or greater. Dr. Nobles found that plaintiff's problems with working memory and abstract thinking indicated possible organicity, and she diagnosed: depressive disorder, not otherwise specified; and, a history of alcohol abuse/dependence. Plaintiff's prognosis was thought to be guarded, with effective treatment. Dr. Nobles found plaintiff's persistence to be adequate, her pace slowed and her concentration, below average (T. 165). She also reported she

AO72A
(Rev. 8/82)

had clearly identified two or more areas with significant limitations in adaptive functioning, but not consistent with a diagnosis of mental retardation. Dr. Nobles found no evidence of exaggeration or malingering (T. 165).

On November 19, 2002, Dr. Jack Somers performed a general physical consultative examination of the plaintiff on behalf of the Social Security Administration (T. 166-172). Plaintiff reported a history of progressive shortness of breath over the previous five years, and headaches of one year's duration (T. 166). She also reported polyarthralgias (T. 168). Dr. Somers diagnosed COPD, with no reversible component and chronic headaches. However, he did not offer an opinion as to plaintiff's RFC.

After the administrative hearing, the ALJ sent the plaintiff to Dr. Gary Nunn, an internist, for an additional consultative examination performed on April 8, 2004 (T. 211-213). Plaintiff reported a history of shortness of breath since 1997, emphysema and intermittent panic attacks (T. 211). Dr. Nunn found the examination to be completely unremarkable, and diagnosed shortness of breath of an unclear etiology, and panic attacks. The only restrictions he placed on plaintiff when completing the RFC form were: an inability to lift/carry 11-20 pounds more than occasionally and a complete inability to lift weights over 20 pounds; no work around concentrated exposure to heights, moving machinery, noise, humidity and vibrations; and, no work involving any exposure to chemicals, dust/fumes and temperature extremes (T. 213).

In arriving at his RFC decision, the ALJ generally relied upon the opinions of the State agency medical consultants who evaluated the issue at the initial and reconsideration levels (T. 15). The ALJ also gave little weight to the opinion of plaintiff's treating physician, Dr.

Vaughn, who had seen the plaintiff on at least six occasions over the treatment period (T. 14, 15). The ALJ discounted Dr. Vaughn's opinion in one sentence, stating "[t]his exhibit is considered not credible and is not consistent with the other medical opinions as a whole." (T. 15). In addition, although recounting in his decision, the findings of Dr. Nobles, the ALJ later makes the somewhat conclusory finding that plaintiff's mental impairment is non severe, noting a lack of treatment, particularly inpatient treatment, and an ability to perform certain activities of daily living (T. 13). We note, however, after careful consideration of the record, that often plaintiff's statements concerning her ability to perform activities of daily living, are qualified (T. 104-105, 164, 258-259, 130-134). The ALJ gives no explanation as to his consideration of Dr. Noble's findings.

Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. *20 C.F.R § 404.1527(d)(2); see also SSR 96-2p; Prosch v. Apfel 201 F.3d 1010, 1013 (8th Cir.2000).* Here, the ALJ has failed to provide an adequate explanation for discounting the opinion of plaintiff's treating physician and the findings of the consultative psychologist, as to plaintiff's limitations and their effect on her ability to engage in substantial gainful activity.

The Court recognizes that the ALJ's decision may be the same after proper analysis on remand, but proper analysis is required. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir.1991).*

**Conclusion:**

Accordingly, we conclude that the ALJ's decision denying benefits to the plaintiff is not supported by substantial evidence and should be reversed. We further conclude that this matter should be remanded to the Commissioner for reconsideration, to include a more thorough analysis and discussion of plaintiff's subjective complaints and nonexertional limitations, particularly in light of her asserted financial difficulties and, for adequate consideration of the treating physician's and consulting psychologist's opinions, or appropriate explanation as to discounting the same.

ENTERED this 29th day of November, 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)